## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARY ULOHO** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 07-3789** |
| **MARIANNA LEGER,**<br>**WARDEN LCIW** | * | **SECTION: "K"(6)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge to conduct a

hearing, including an evidentiary hearing, if necessary, and submission of proposed findings

and recommendations for disposition pursuant to Title 28, United States Code, Sections

636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254

cases. Upon review of the entire record, the Court has determined that a federal evidentiary

hearing is unnecessary. See Title 28, United States Code, Section 2254(e)(2).[1] For the

---

[1]Under Title 28, United States Code, Section 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, Title 28, United State Code, Section 2254(e)(2)(A)(I), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, Title 28, United States Code, Section 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. Title 28, United States Code, Section 2254(e)(2)(B).

following reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### <u>Procedural Background</u>[2]

Petitioner, Mary Uloho, is presently incarcerated in the Louisiana Correctional Institute for Women located in Saint Gabriel, Louisiana. The Jefferson Parish District Attorney filed a bill of information charging petitioner, Mary Uloho, with obstruction of justice, a violation of LSA-R.S. 14:130.1. The petitioner pled not guilty at arraignment. Petitioner proceeded to trial on November 12, 2002, before a twelve-person jury in the Twenty-Fourth Judicial District Court, Parish of Jefferson, No. 01-1827. On November 14, 2002, the jury returned a verdict of guilty as charged.[3] Before sentencing petitioner on February 13, 2003, the trial judge denied petitioner's "Motion for New Trial Alternatively Motion to Arrest the Judgment." After petitioner waived delays, the trial judge sentenced petitioner to serve twenty years of imprisonment at hard labor. The State filed a multiple offender bill of information alleging petitioner to be a second felony offender, and petitioner denied the allegations therein. After a hearing, the trial judge found petitioner to be a second felony offender, vacated the original sentence, and imposed a sentence of twenty-five years

---

[2]The procedural background was taken from the opinion issued on direct appeal, **State v. Uloho,** 875 So.2d 918, 921 (La. App. 5th Cir. 2004) and after review of the state court record.

[3]See State Record, Vol. 1 of 8, minute entry No. 10, dated Nov. 14, 2002.

of imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[4] The trial judge denied petitioner's timely motions to reconsider the original and multiple offender sentences.

Petitioner timely filed an appeal of her conviction and sentence with the Louisiana Court of Appeal, Fifth Circuit on May 26, 2004. The Fifth Circuit affirmed petitioner's conviction and sentence after amending petitioner's sentence, deleting the restriction on parole eligibility.[5] Petitioner filed a writ application with the Supreme Court of Louisiana which was denied on November 19, 2004.[6]

Petitioner filed an application for post-conviction relief in the state district court on November 30, 2005.[7] The state district court denied relief on April 19, 2006.[8] Petitioner applied for supervisory writs in the Louisiana Court of Appeal, Fifth Circuit on June 5, 2006,[9] which denied relief on June 29, 2006.[10] Thereafter, petitioner filed a writ

---

[4] See State Record, Vol. 1 of 8, minute entry No. 15, dated March 9, 2003.

[5] **State v. Uloho,** 875 So.2d 918, 934 (La. App. 5th Cir. 5/26/04).

[6] **State v. Uloho,** 888 So.2d 192 (La. 11/19/04).

[7] State Record, Vol. 2 of 8, tab 4, for a copy of the application.

[8] See State Record, Vol. 3 of 8, tab 6, for a copy of the ruling.

[9] See State Record, Vol. 8 of 8, tab 17, for a copy of petitioner's application for Supervisory Writs.

[10] See State Record, Vol. 3 of 8, tab 12, for a copy of the ruling. **State v. Uloho,** No. 06-KH-410.

application with the Supreme Court of Louisiana on July 25, 2006,[11] which was denied on April 27, 2007.[12]

Petitioner signed and thus filed her federal petition for habeas corpus relief on July 11, 2007.[13] Petitioner brought a total of nine claims[14] which can be grouped as follows:

---

[11]See State Record, Vol. 8 of 8, tab 16, for a copy of the writ.

[12]See State Record, Vol. 8 of 8, tab 15, for a copy of the ruling. **State v. Uloho,** No. 2006-KP-1863; also see 955 So.2d 675 (La. 4/27/07).

[13]"A prisoner's habeas application is considered "filed" when delivered to the prison authorities for mailing to the district court." **Roberts v. Cockrell,** 319 F.3d 690, 691, N.2 (5th Cir. 2003).

[14]Petitioner brought the following claims in her federal petition:
1. She was denied her right to effective assistance of counsel when her attorney failed to present an accessory-after-the-fact defense;

2. The state district court erred in applying LSA- C.Cr.P. art.930.4 to bar her due process claim under **Jackson v. Virginia**;

3. Appellate counsel's omission of a sufficiency of the evidence claim constituted ineffective assistance of counsel;

4. She was denied effective assistance of counsel where her trial attorney failed to impeach Deputy Coussou;

5. She was denied effective assistance of counsel where her trial attorney failed to question Detective Carroll as to whom transported her to the Detective Bureau;

6. She was denied effective assistance of counsel where trial counsel failed to properly cross-examine State witness Wylene Hall;

7. She was denied her right to effective assistance of counsel when her attorney failed to request jury instructions on accessory-after-the-fact;

8. The state courts erred in concluding that trial counsel's concession of the Ohio felony as a prior conviction for multiple bill purposes was effective assistance of

4

seven claims concerning ineffective assistance of trial counsel (claims 1, 4, 5, 6, 7, 8 and 9);

one claim of ineffective assistance of appellate counsel (claim 3); and, one claim that the

court erred in applying procedural bar concerning its failure to review the  sufficiency of

evidence. (Claim 2.)  The State, in its response, concedes that the instant action is timely and

that petitioner has exhausted her state court remedies.[15]  See **Rose v. Lundy,** 455 U.S. 509,

102 S.Ct. 1198 (1982).  Accordingly, this Court shall review the pertinent facts and the

standard of review, then proceed to address the merits of petitioner's claims.

### Statement of Facts[16]

On March 3, 2001, Terry Bean, an armored car driver, was the victim of an

armed robbery at the Albertson's Grocery Store on Barataria Boulevard in Marrero. Detective

Kevin Decker of the Jefferson Parish's Sheriff's Office responded to the scene and

interviewed the victim. Detective Decker learned that the perpetrator was described as a

black male wearing red clothing, a red hat and a black wig, driving a late model Lincoln

---

counsel, erred in failing to address the claim presented, and erred in upholding the
multiple bill adjudication; and,

9.  The district court erred in failing to address counsel's failure to object to
inadmissible sentencing information relied upon by the trial court where the
failure constituted ineffective assistance of counsel.

[15]See Federal Rec., Doc. No. 11, p. 4.

[16]The statement of facts was taken from the opinion issued on direct appeal, **State v.
Uloho,** 875 So.2d 918, 921-923 (La. App. 5th Cir. 2004) after review of the state court record.
(Footnote omitted.)

Continental with a temporary license tag in the rear window. Detective Decker also learned that the suspect took Mr. Bean's gun and that Mr. Bean had a laceration on his head for which he sought medical attention. Approximately $15,000 in cash and checks was taken in the robbery.

Deputy Brent Coussou heard the broadcast of the suspect and the vehicle involved in the armed robbery. Approximately thirty minutes after hearing the broadcast, Deputy Coussou saw a Lincoln that matched the description of the suspect's vehicle near the Easy Serve in Lafitte. Deputy Coussou stopped the vehicle, ordered the passenger to place her hands on the ceiling of the car and ordered the driver to step out. Deputy Coussou, with the assistance of other officers, handcuffed the driver, Elton Thomas. He observed that the driver was wearing grey coveralls over red sweat pants. The driver was handcuffed and placed in another officer's unit. When Deputy Coussou approached the Lincoln to speak to the passenger, Mary Uloho, Deputy Coussou observed a gun on the "hump" between the driver's and the passenger seats. Deputy Coussou also saw a wig and red clothing in the vehicle. Because Uloho was being cooperative and because he had experienced problems with one set of his handcuffs, Deputy Coussou placed Uloho unhandcuffed in the rear seat of his police car.

Deputy Coussou acknowledged that he did not search Uloho, who was wearing

a large sweat shirt, before placing her in the police car. Further, Deputy Coussou testified that Uloho was left unattended in the unit for approximately fifteen or twenty minutes until she was removed from the unit, handcuffed, and searched when a female officer arrived on the scene. Meanwhile, Detective John Carroll interviewed a witness, Gerard Guichard, and brought the witness to see the Lincoln. Mr. Guichard identified the Lincoln as the one used in the armed robbery.

Thereafter, Deputy Coussou drove Uloho to the Detective Bureau. Deputy Coussou noticed that Uloho was "fidgeting" in the car. When he asked her what she was doing, Uloho replied that the handcuffs were too tight. Deputy Coussou transferred Uloho to the custody of the robbery detectives. Deputy Coussou testified that he asked another officer, Deputy Modica, to check under the seat where Uloho was sitting, since suspects sometimes place things under the seat. However, he did not ask Deputy Modica to check under the front. When Deputy Coussou's shift ended at approximately 3:30 p.m., he went home without looking in the rear seat of his car.

That same day, the suspect vehicle was towed to the Detective Bureau and Detective Decker obtained a search warrant for the Lincoln. The resulting search yielded a purse containing documents bearing Uloho's name and two handguns, one of which belonged to Mr. Bean. Another handgun was recovered from the front seat of the Lincoln. Red clothing, a black wig, and a bag containing checks were also recovered from the Lincoln.

However, the cash was not found in the Lincoln, but was later discovered in Deputy Coussou's car. Detective Decker also learned that the vehicle had been rented from Enterprise Rent-A-Car in defendant's name.

Detective Carroll subsequently interviewed Elton Thomas and Uloho. Uloho initially did not make any statements to Detective Carroll, but later said that she saw a "policeman take something out of her car and place it into his car." Detective Carroll notified Sergeant Joe Picone of Uloho's statement, and an investigation ensued.

At approximately 7:30 that night, Deputy Coussou realized that he had left his handcuffs at the Detective bureau. After confirming that the handcuffs were still there, Deputy Coussou returned to the Detective Bureau. While there, Deputy Coussou met with Lieutenant Toca and provided a written statement of the preceding events. Deputy Coussou was informed that he was being investigated as an accessory to an armed robbery. Deputy Coussou denied that he had placed the money in his police car and confirmed that Uloho was the only person in the rear of his unit on March 3, 2001. Deputy Coussou, accompanied by Detective Decker and Lieutenant Toca, checked underneath the front seat on the passenger and driver's side. Deputy Coussou found clear plastic bags, each containing $7,500 in cash and Albertson's deposit slips, under the driver's and passenger seats. According to Deputy Coussou, it was only possible to see the bags by getting on his hands and knees because the

money was actually shoved under the "guard" on the back of the front seat. Deputy Coussou identified photographs of the money underneath the seat of his unit.

Later that night, Detective Decker interviewed four women, including Aletha Washington, Valeria Curtis, Wylene Hall, and Sharon Carletto. Two of the women, Valeria Curtis and Wylene Hall, testified at trial. Ms. Curtis and Ms. Hall testified that they were in a "holding cell" at the Jefferson Parish Correctional Center with Uloho and some other women on the evening of March 3, 2001 and the early morning of March 4, 2001. Ms. Curtis testified that Uloho told the women in the jail that she had been arrested for robbery. Ms. Curtis said that Uloho inquired about contacting the arresting officer. Both Ms. Curtis and Ms. Hall testified that, when the women in the holding cell asked Uloho the reason she wanted this information, Uloho said she had placed something under the seat of the police car. However, Uloho would not reveal what she had placed under the seat.

Ms. Curtis said that Uloho seemed angry at the arresting officer and that Uloho said she "wanted to bring him down." Ms. Curtis and Ms. Hall testified that one of the women in the cell contacted a deputy, who then questioned the women individually. When four of the women had the same statement, they were taken to the Detective Bureau and questioned.

Walter Gorman of the Jefferson Parish Sheriff's Office testified that no disciplinary action was taken against Deputy Coussou once the investigation into Uloho's

allegations was completed. However, Colonel Gorman stated that the allegations complicated the investigation of the robbery at Albertson's because the efforts of the police were shifted from investigating the robbery to determining whether there was a "bad" officer in their midst.

## <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including Title 28, United States Code, Section 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(2). **Hill v. Johnson,** 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Title 28, United States Code, Section 2254(d)(1). The United States Supreme Court has noted:

> Section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the

governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in **Williams [v. Taylor,** 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

**Bell v. Cone,** 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Title 28, United States Code, Section 2254(d)(2); see also Hill, 210 F.3d at 485; Title 28, United States Code, Section 2254(e)(1).

## Ineffective Assistance of Counsel

### (Claims 1, 4, 5, 6, 7, 8 and 9 pertain to trial counsel and claim 3 pertains to appellate counsel.)

Petitioner claims that her trial and appellate attorneys provided ineffective assistance of counsel which violated her rights under the Sixth and Fourteenth Amendments to the United States Constitution.

The seminal case for adjudicating a habeas petitioner's ineffective assistance of counsel claim is **Strickland v. Washington,** 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), which places on petitioner the burden of demonstrating not only that her counsel's performance was deficient, but also that she was prejudiced as a result of counsel's

deficient performance. If a court finds that a petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. **Id.** Under the deficient performance prong of the **Strickland** test," ... it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" **Lockhart v. Fretwell,** 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993), quoting **Strickland,** 466 U.S. at 690, 104 S.Ct. At 2066. "An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." **United States v. Walker,** 68 F.3d 931, 934 (5th Cir. 1995), cert. denied, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996), quoting **United States v. Acklen,** 47 F.3d 739, 742 (5th Cir. 1995), cert. denied, 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 893 (1997). To prove prejudice under the **Strickland** standard, a petitioner "...must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland,** 466 U.S. at 694, 104 S.Ct. 2068.

**Claims 1 and 7**

Petitioner argues that her trial counsel was ineffective because counsel failed to present a defense of accessory after the fact and because counsel failed to request jury instructions relative to accessory after the fact.

Review of the record shows that the State filed a pretrial Motion in Limine,[17] seeking to preclude Uloho's counsel from referring during voir dire, opening or closing argument or abducting evidence from any witness that Uloho could be found guilty of violation of LSA-R.S. 14:25, accessory after the fact.[18] The State's motion in limine also mentioned that Uloho was charged with violation of LSA-R.S. 14:130.1,[19] obstruction of

---

[17]See State Record, Vol. 4 of 8, pages 27-33 for copies of motion in limine and memorandum.

[18]LSA-R.S. 14:25 provides, in pertinent part:
An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.
An accessory after the fact may be tried and punished, notwithstanding the fact that the principal felon may not have been arrested, tried, convicted, or amenable to justice.
Whoever becomes an accessory after the fact shall be fined not more than five hundred dollars, or imprisoned, with or without hard labor, for not more than five years, or both; provided that in no case shall his punishment be greater that one-half of the maximum provided by law for a principal offender.

[19]L.S.A.-R.S. 14:130.1 defines obstruction of justice, in pertinent part:
A.  The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding.  Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
(b) At the location of storage, transfer, or place of review of any such evidence.
. . .
B.  Whoever commits the crime of obstruction of justice shall be subject to the following penalties:

justice and as such, accessory after the fact is not a responsive verdict to obstruction of justice. The district judge granted the motion.[20] Uloho applied for supervisory writs of review in the Louisiana Court of Appeal, Fifth Circuit which granted the writ on September 18, 2002. The Fifth Circuit vacated the judgment of the trial court. The court explained:

> In the present case, we have carefully reviewed the writ application, exhibits, and the pertinent case law, and we find that the trial court's blanket prohibition against any references or evidence concerning the crime of accessory after the fact is unduly broad and restrictive. While the trial court may deny the defense the opportunity to read the definition of accessory after the fact to the prospective jurors during voir dire, prohibiting any references or evidence concerning this crime would prejudice the defendant's right to present a defense. The defendant should not be so limited during voir dire or the presentation of her case and should be able (sic) suggest and discuss alternative charges if they are supported by the evidence.
>
> Accordingly, we vacate the judgment of the trial court prohibiting any references or evidence concerning the crime of accessory after the fact. However, nothing in this writ disposition otherwise limits the trial judge from controlling the admissibility of evidence according to law.

**State of Louisiana v. Mary Uloho,** No. 02-K-895 (La. App. 5th Cir. 09/18/02). A copy of the ruling is contained in the State Record, Vol. 6 of 8.

---

. . .

(2) When the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less that a life sentence may be imposed, the offender may be fined not more than fifty thousand dollars, or imprisoned for not more than twenty years at hard labor, or both.

[20]See State Record, Vol. 4 of 8, page 34, Aug. 6, 2002.

It is also noted that, on direct appeal, Uloho claimed that she was denied the right to present a defense because of the trial court's granting of the State's motion in limine. The State argued that the issue was moot, as the Fifth Circuit had already granted Uloho's writ.  See **State v. Uloho,** 875 So.2d 918, 923-924.  On appeal, the Fifth Circuit ruled that Uloho's claim had no merit and stated that Uloho did not point to any trial ruling made after the granting of her writ application, which prohibited her from urging the defense of accessory after the fact.

Uloho now claims that her counsel provided ineffective assistance of counsel because counsel failed to present the defense of accessory after the fact and failed to request a jury instruction on said defense.

The respondent argues that Uloho's counsel abandoned the accessory after the fact defense to avoid any inference that Uloho had knowledge that a crime had been committed.  Moreover, respondent points out that the trial judge, on post-conviction relief, determined that Uloho's trial counsel exercised reasonable trial strategy in not pursuing the accessory after the fact defense.[21]

The trial judge properly applied the established standard regarding whether a claim of ineffective assistance of counsel had been proven.  The trial judge said, in pertinent part:

---

[21]See State Record, Vol. 3 of 8, Tab 6, for a copy of Court's Order of April 19, 2006.

The Supreme Court of the United States established the standards for the claim of ineffective assistance of counsel in **Strickland v. Washington,** 466 U.S. 668 (1984). The test established by the Supreme Court provides that in order for a claim of ineffective assistance of counsel to prevail, the petitioner must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense in that the errors were so serious as to deprive petitioner of a fair trial. Furthermore, the Court in **Strickland,** established that the performance inquiry into a counsel's effectiveness must be that his assistance was "reasonable considering all the circumstances." **Id.** at 689. The Court went on to emphasize the "countless" ways to provide effective assistance and also cautioned a counsel's action being challenged that might be considered "sound trial strategy." **Id.**

In the instant case, most of the defendant's claims do not go beyond strategic choices made by her counsel at the time of the defendant's trial. A review of the record reveals that defense counsel filed numerous pre-trial motions in this case. The defendant's Motion to Suppress Statements was argued and heard before the trial court. The trial court denied the defendant's Motion and defense counsel objected to same. Defense counsel properly cross-examined the State's witnesses during the jury trial. Defense counsel also filed numerous post-trial motions, including a Motion to Reconsider Sentence, Motion for New Trial, and Subpoenas for witnesses for the Motion for New Trial. In the Motion for New Trial, defense counsel raise the claim that the guilty verdict was contrary to the law and evidence. The defense also argued that the State presented no credible evidence of a crime being committed by defendant and the State relied "heavily" on the testimony of two (2) jailed inmates without any other corroborating evidence. A further review of the record shows that defense counsel filed Objections to Multiple Offender Bill of Information alleging that the predicate conviction sought be used by the State was constitutionally infirm and can be either a felony or a misdemeanor under Louisiana law.

\* \* \*

**State of Louisiana v. Mary Uloho,** No. 01-1827, Div. "L", Order, dated April 19, 2006, page 2. See State Record, Vol. 3 of 8, Tab 6, for a copy of the Order.

Turning to Uloho's claim that her attorney was ineffective because counsel failed to request jury instructions on accessory after the fact, there is nothing in the record which shows that such instructions were justified since the trial strategy was not to present such a defense. Therefore, counsel was not ineffective, as counsel followed another defense. Perhaps the most telling event which focused upon trial strategy is found during Uloho's trial counsel's argument to the Court prior to sentencing.

MR. CREECH:

I just want to point out to the Court, Your Honor, that what Ms. Uloho was convicted of was attempting to hide money underneath the -- in a police car, and that was all, Judge. There was absolutely no indication whatsoever that she was involved in the original offense. The District Attorney's Office dismissed any of those charges against her because they didn't have any evidence --they couldn't convict her of that, they knew that and there's been a lot of, I guess, back and forth and perhaps some emotions reared their ugly heads throughout this case. But, again, in the final analysis, we're really talking about trying to hide some money in a police car and that's all she was convicted of. And I'd ask the Court to take that into consideration in sentencing Ms. Uloho.

(See State Record, Vol. 2 of 8, pages 297-298.)

Upon considering the record and the applicable law, the state court's ruling was not contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. The claims are without merit.

## Claim 4 - Impeachment of Deputy Brent Coussou

Petitioner claims that she was denied effective assistance of counsel because her trial counsel failed to impeach Deputy Brent Coussou. Specifically, petitioner claims that her counsel failed to question Deputy Coussou regarding petitioner being handcuffed as reported on the one page initial police report.[22] The challenged portion of the report states: "I advised the passenger of her **Miranda** rights, handcuffed her then placed her in the rear of my unit once again for officer safety." The state's position is that Deputy Coussou's statement contained in his police report is consistent with his trial testimony and that even if any discrepancies exist, they were insignificant and inconsequential to the verdict. The state supports its position by referencing to specific portions of the trial transcript as follows, in pertinent part:

> With respect to the issue of handcuffing, the record demonstrates that Deputy Coussou testified that he initially placed the petitioner, unhandcuffed, into the back of his vehicle. (R., Vol. 4, p. 156). She was left unattended in the backseat of the unit for approximately fifteen minutes until a female sergeant arrived on the scene. (R., Vol. 4, p. 158). At that time, the petitioner was handcuffed, searched, and then placed back into the unit. (R., Vol. 4, p. 159). Thereafter, during transit to the Detective

_____

[22]See State Record, Vol. 2 of 8, Tab 5 for a copy of the report.

Bureau, Deputy Coussou observed petitioner fidgeting and squirming back and forth. (R., Vol. 4, pp. 159-160).

. . . . .

The petitioner was wearing a large sweater at the time and was not handcuffed, searched, or frisked prior to being placed into the unit. (R., Vol. 4, p. 169). Since the stacks of money in the bags were only one and one-half inches thick, the money would not have been difficult for the petitioner to conceal on her person. (R., Vol. 4, p. 145).

See Fed. Record, Doc. 11, page 20, Response in Opposition to Granting Writ of Habeas Corpus.

The court reviewed the above-referenced trial transcript of Deputy Coussou's testimony and determined same to be accurate. Moreover, this Court reviewed the cross-examination of Deputy Coussou by petitioner's trial attorney. (State Record, Vol. 4 of 8, pages 165-173.)

The following excerpts of Deputy Coussou's cross-examination shows that trial counsel fully developed testimony regarding the events pertaining to petitioner's being handcuffed at some point during the investigation. Thus, counsel's failure to use the police report appears to have been trial strategy.

**BY MR. CREECH**

Q.     But just so there's no misunderstanding, at the time you put the female in your car, the driver of the vehicle had already been placed in a police vehicle?

A.     Correct.

Q.  Handcuffed, correct?

A.  Correct.

Q.  It's your testimony that prior to placing the female in your car, you did not handcuff her.

A.  Correct.

Q.  And you did not search her.

A.  Correct.

Q.  You did not frisk her, correct?

A.  Correct.

Q.  And just so the jury understands, a frisk is just a pat down, correct?

A.  Correct.

Q.  And, at that time, you saw no bulges of anything to make you suspicious?

A.  Correct.  She also did have a large sweater on at the time as well.

. . .

(State Record, Vol. 4 of 8, pages 168-169, lines 26-32 and 1-13 respectively.)

Q.  And your testimony is that while she was in that vehicle, while the black male was handcuffed in another vehicle and she was in your vehicle, nobody stood and watched her?

A.  I was standing right next to my car.

Q.  You were?

A.      Yes, sir.

Q.      Okay, so you - - but you weren't watching her?

A.      She was in the back seat of my car with the cage closed, there was no way she could get out by herself.

Q.      But you hadn't frisked her, Officer.

\* \* \* \*

(State Record Vol. 4 of 8, page 170, lines 22-32.)

A.      Correct.

\* \* \* \*

Q.      And you never saw her put anything in that car, did you?

A.      No, sir, I did not see her put anything in the car.

Q.      As a matter of fact, you testified that at one point you saw her fidgeting and squirming, that was after she had been handcuffed, correct?

A.      Correct.

Q.      And, at one point, you asked another police officer to check the back seat, did you not?

A.      Yes, sir, I had Deputy Modica check underneath the bench of the - - the bench seat.

Q.      And he didn't find anything, did he?

A.      Correct.

Q.      And he didn't say he saw anything under those front seats, did he?

(State Rec. Vol. 4 of 8, page 171, line(s) 1 and 8-22.)

Further review of the record shows that Uloho was the only person who had been placed in the back seat of Deputy Coussou's police unit on the day of the crime. (State Record, Vol. 4 of 8, page 165, lines 15-21.) The record shows that Uloho's trial counsel carefully cross-examined Deputy Coussou pertaining to the time during the investigation, that Uloho remained unhandcuffed and at what point she was handcuffed and placed into Deputy Coussou's police unit. The failure to use the summary police report to cross-examine Deputy Coussou was a trial strategy decision made by counsel as it appears that he had obtained the testimony he was looking for. Therefore, petitioner has not proven the **Strickland** test of showing prejudice. This claim is meritless.

### Claim 5 - Counsel Failed to Question Detective John Carroll

Petitioner claims that her trial counsel provided ineffective assistance by failing to cross-examine Detective John Carroll relative to his testimony rendered during a June 27, 2001, hearing on a motion to suppress evidence.[23] Uloho claims that Attorney Davidson S. Ehle, III,[24] questioned Detective Carroll regarding his participation in the armed robbery investigation. Specifically, petitioner claims that Detective Carroll testified that Detective Brent Coussou transported Elton Thomas to the Detective Bureau. At trial, Detective

---

[23]See State Record, Vol. 2 of 8 for a copy of the transcript dated June 27, 2001. Hereinafter referred to as T. ___.

[24]Attorney Ehle III, represented the co-defendant Elton Thomas. Petitioner was represented by retained counsel Joseph A. Marino, Jr. during the motion.

Coussou said that he transported petitioner Uloho to the Detective Bureau. Moreover, petitioner claims that her trial counsel should have used the testimony to raise reasonable doubt; to impeach Detective Carroll; and, to advocate efficiently and zealously on petitioner's behalf.

The State asserts that petitioner's claim that her counsel's failure to impeach Detective Carroll with his prior testimony must fail because petitioner has not demonstrated that she is entitled to relief under **Strickland.**

Review of the transcript of the motion to suppress shows that Detective Carroll observed Elton Thomas sitting in the back of a marked police car; that he removed Thomas from the police car while Detective Decker and the victim drove past them to identify Thomas; and, that thereafter Thomas was taken to the Detective Bureau. (T. 40.) Detective Carroll did not identify the driver of the patrol unit during direct examination.

However, during cross-examination by Attorney Ehle, Detective Carroll stated that Deputy Coussou transported Thomas to the Detective Bureau and that he followed. (T. 45.) He also admitted that Thomas was never in his (Carroll's) vehicle. (T. 49.)

The State's position is well founded and review of the trial record shows that Deputy Coussou's trial testimony was unambiguous that he transported Uloho to the Detective Bureau. (See State Record, Vol. 4 of 8, pages 159-160, 165.) Additionally, Deputy Coussou's police report shows that Uloho was detained in Deputy Coussou's police unit and

that Elton Thomas was placed in a different vehicle. (See State Record, Vol. 2 of 8, Tab 5.) A close review of Detective John Carroll's trial testimony[25] shows that petitioner's counsel did not question him concerning whether Detective Coussou transported petitioner to the Detective Bureau. The cross-examination dealt with whether or not petitioner had given a statement to the effect that she observed a policeman take something out of her car and place it into his car.[26] Deputy Coussou's testimony is also corroborated by the trial testimony of Valeria Curtis and Wylene Hall wherein they said that Uloho admitted placing something under the seat of her arresting officer's car. (See State Record, Vol. 4 of 8, pages 177-178, 191-192.) Therefore, Uloho's trial counsel was not ineffective in failing to question Detective Carroll regarding his testimony that Deputy Coussou transported Elton Thomas to the Detective Bureau. Petitioner failed to show any prejudice. Thus, this claim is meritless.

**Claim 6 - Failure to Impeach Wylene Hall**

Petitioner claims that her trial counsel provided ineffective assistance of counsel and she was thus denied her Sixth Amendment rights. Specifically, petitioner claims that her counsel failed to impeach Wylene Hall with evidence of Hall's lengthy criminal history, certified copies of court records showing convictions, and failed to establish Hall's bias and/or

---

[25]See State Record, Vol. 4 of 8, T. 148-153.

[26]**Ibid.**, T. 153.

motive to testify. Petitioner also claims that counsel failed to alert the jury that Hall's credibility was suspect.[27]

The State maintains that petitioner's claim is meritless as demonstrated by trial counsel's vigorous and challenging cross-examination of Wylene Hall. (See State Record, Vol. 4 of 8, pages 193-199.) Review of the cited transcript shows that petitioner's counsel properly questioned Hall about her prior criminal conviction in an effort to impeach Hall's credibility. The only conviction Hall denied was for being charged with crime against nature and pleading guilty to prostitution. Petitioner's counsel used a court minute entry to question Hall about her prostitution conviction. However, Hall denied the conviction. (See State Record, Vol. 4 of 8, pages 196-197.) The jury heard about Hall's other convictions which she admitted. Therefore, there was nothing else to impeach her on.

Additionally, petitioner's counsel argued to the jury the following concerning Hall's credibility:

> "She's suddenly this model citizen? She has four convictions; three of them distributing drugs, two of them selling drugs around kids."

(See State Record, Vol. 5 of 8, page 232, lines 12-16.)

> "Her testimony is not worth a plug nickel. The audacity of coming into court and acting like this model citizen after selling drugs to kids..selling drugs near kids. It's an outrage."

---

[27]See Federal Rec., Doc. No. 1, Petition.

(See State Record, Vol. 5, of 8, page 232, lines 29-32 and page 231, line 1.)

Again, petitioner's counsel challenged Hall's denial of being previously convicted of prostitution. (See State Record, Vol. 4 of 8, page 196-197.) Hall maintained her denial even when pressed to answer specific questions about her birthday, court case number and division of court and the date of conviction.

  The jury was aware that Hall was in jail and that Hall was testifying out of self-interest. Counsel for the State pointed out that petitioner cannot and did not demonstrate any resulting prejudice from her counsel's purported questioning regarding petitioner's credibility. The Louisiana Court of Appeal, Fifth Circuit addressed this issue in the context of the denial of a special jury charge, as follows:

> Defendant argues she was prejudiced because the jury was not told that it could disregard the entire testimony of Wylene Hall, whom defendant contends lied about her prior convictions during her testimony. According to defendant, Ms. Hall's testimony was the most damaging because only she testified that defendant "was setting up a cop." The record does not support defendant's position in several respects. First, it is reasonable to infer from her testimony that Ms. Hall was confused about her prior convictions. Ms. Hall stated on direct examination that she was incarcerated for "two distribution charges and one being on film selling to an undercover officer out of uniform." She denied that she had any convictions for any other crimes.
>
> On cross-examination, Ms. Hall was questioned about a possession of cocaine charge, to which Ms. Hall said she pled guilty, and a prostitution charge, which Ms. Hall denied. From her testimony, it is apparent that Ms. Hall was confused about the number of drug convictions that she had. Although defense

counsel read into the record the text of a purported a (sic) minute entry indicating that a Wylene S. Hall with the same date of birth pled guilty to prostitution, that minute entry is not in the record, nor is there any other evidence that the witness was the same person who pled guilty to prostitution.

Moreover, Ms. Hall's testimony was not the sole evidence of defendant's statement. Ms. Curtis testified that defendant told her and several other women that "she had placed something in the car, underneath the seat on the driver's side in the police car." Ms. Curtis further said that defendant said she wanted to "bring him down." Thus, Ms. Hall's testimony was not the sole evidence of the defendant's statement.

Considering the foregoing, we conclude that the trial judge properly denied the requested instruction because the general charge was adequate and because the record reveals no miscarriage of justice, prejudice or violation of defendant's rights involved in this assignment of error.

**State v. Uloho,** 875 So.2d at 926-927.

Petitioner's counsel was not ineffective as he properly questioned Wylene Hall regarding her credibility and sought to impeach her testimony. This decision amounted to trial strategy. Accordingly, this claim has no merit.

## Claim 8 - Ineffective Assistance of Counselor as Counsel Failed to Contest Predicate Conviction

Petitioner claims that her counsel provided ineffective assistance by failing to contest the State's use of a 1994 Ohio conviction for felonious assault[28] used to enhance her

---

[28]The Louisiana Court of Appeal, Fifth Circuit, in **State v. Uloho,** 875 So.2d 918 at 929, explained the Ohio law as follows:

According to Ohio Revised Code Section 2903.11 as it existed in 1994 when

sentence pursuant to LSA-R.S. 15:529.1(A)(1). Thus, petitioner contends that the Louisiana

Courts erred by adjudicating her a second felony offender because the State failed to prove

that the 1994 Ohio predicate conviction for felonious assault would be a felony if committed

in Louisiana.

The Louisiana Court of Appeal Fifth Circuit addressed this matter on direct

appeal regarding Louisiana law as follows, in pertinent part:

> For a conviction from another state to serve as a predicate felony
> for purposes for enhancement, the conviction must be for a
> "crime which, if committed in this state would be a felony...."
> *See*, LSA-R.S. 15:529.1(A)(1). Louisiana courts must determine
> the analogous state crime according to the nature of the act
> involved, not the penalty provided for the offense in the foreign
> jurisdiction. **State v. Carouthers,** 618 So.2d 880, 882
> (La.1993); **State v. Hennis,** 98-665 (La.App. 1 Cir. 2/19/99), 734
> So.2d 21, 24, *writ denied,* 1999-783 (La.7/2/99), 747 So.2d 16.

defendant pled guilty, felonious assault was defined as follows:

2903:11 FELONIOUS ASSAULT

(a) No person shall knowingly:

(1) Cause serious physical harm to another;

(2) Cause or attempt to cause physical harm to another by means of a deadly
weapon or dangerous ordnance, as defined in section 2923.11 of the Revised
Code.

(B) Whoever violates this section is guilty of felonious assault, an aggravated
felony of the second degree. If the victim of the offense is a peace officer, as
defined in section 2935.01 of the Revised Code, felonious assault is an aggravated
felony of the first degree.

The Louisiana Court of Appeal, Fifth Circuit addressed the multiple bill of information, the evidence offered during the multiple offender hearing and the objections by petitioner's attorney as follows, in pertinent part:

> In the instant case, the multiple offender bill of information alleged defendant was a second felony offender because she pled guilty to violating Ohio Revised Code Section 2903.11(A)(2) on "April 4, 1994," and was sentenced on May 31, 1994 in case number 93-CR-2770. Prior to the hearing, defendant filed objections to the multiple offender bill on several grounds, including that the arrest documentation was inadmissible hearsay and that the predicate Ohio conviction could either be a felony or a misdemeanor under Louisiana law.
>
> The multiple offender hearing began on April 1, 2003. At the conclusion of the State's evidence, defendant objected on the basis that the Ohio conviction, felonious assault, was not necessarily a felony in Louisiana. The trial court held the matter open until April 9, 2003. At that hearing, the prosecutor offered State's Exhibit 5 to the prove that defendant's conduct underlying the conviction constituted a felony in Louisiana. State's Exhibit 5 consisted of numerous documents that each contained a raised seal for the Dayton Municipal Court in Dayton, Ohio and a signature of the deputy clerk for the Dayton Municipal Court. These documents appear to relate to the police investigation into a complaint of a felonious assault involving defendant.
>
> At the hearing, defense counsel stated as follows regarding State's Exhibit 5:
>
> MS. GLORIOSO [defense counsel]:
>
> Your Honor...the issue last week was ... that felonious assault in the State of Ohio, I believe [could be a] felony or misdemeanor depending upon the facts as they occurred.

> Mr. Tamburo has provided me with a certified copy of the police report from Ohio which does, in fact, state that the victim in that felonious assault was, in fact, struck with a bullet and did require medical attention which makes that an aggravated battery in this state. The only objection we're going to have is that there's no one here to testify to those facts.
>
> The trial judge admitted State's Exhibit 5 over defendant's objection.

**State v. Uloho,** 875 So.2d at 929.

After reviewing the State of Ohio's definition of felonious assault and Uloho's attorney's concession that in Ohio felonious assault could be a felony or a misdemeanor depending upon the facts as they occurred, the Louisiana Court of Appeal, Fifth Circuit said, ... "we find that defendant abandoned her former position and conceded that the offense would constitute aggravated battery, which is a felony in Louisiana.[29]  (See **State v. Uloho,** 875 So.2d ay 929-930.)[30]  Moreover, LSA-R.S. 14 Sections 33 and 34 define battery and aggravated battery as follows:

### § 33.  Battery defined

> Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.

---

[29]A felony in Louisiana is any crime for which the offender may be sentenced to death or imprisoned at hard labor.  LSA-R.S. 14:2(4).  Aggravated battery is a felony because an offender may be imprisoned at hard labor.  See, LSA-R.S. 14:34.

[30]See **State v. Uloho,** 875 So.2d at 930, fn2.

**§ 34.  Aggravated battery**

Aggravated battery is a battery committed with a dangerous weapon.

Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.

The evidence adduced at the multiple offender hearing established that Uloho was properly adjudicated as being a second felony offender.  Petitioner's claim that her attorney failed to provide effective assistance of counsel is meritless because the felonious assault guilty plea would amount to aggravated battery in Louisiana.  The facts as established by the state show that petitioner had a prior felony conviction; that petitioner is the same person convicted of that felony; that petitioner was represented by counsel when she entered her guilty plea; and, that the state established petitioner's identity in the prior conviction through the testimony of a finger print expert.  (See State v. Uloho, 875 So.2d at 932.) Considering the facts and the applicable law, this claim lacks merit.

**Claim 9 - Failure to Object to Inadmissable Sentencing Information**

Petitioner claims the court erred in failing to address her trial counsel's failure to object to inadmissable information allegedly considered by the trial court in meting out her sentence.

Thus, petitioner claims that her trial counsel was ineffective under **Strickland.** The information complained of concerned the prosecutor's submission of the "rap sheets" of

petitioner's five children. The State argues that the petitioner's claim has no merit because the information was offered to rebut the sentencing related materials filed into the record on behalf of petitioner. Uloho had previously submitted photographs of members of her family for sentencing consideration. Thus, the State submitted booking and arrest rap sheets of five of Uloho's children.[31] The State also mentions that the record contains a copy of a pre-sentence letter from one of petitioner's sons, Gregory D. Uloho. In that letter, Mr. Uloho specifically referenced his lack of a criminal record and credited his mother as a positive influence in the lives of her children. (See State Record, Vol. 3, Tab 8.) Additionally, another son, Onoriode L. Uloho, wrote a pre-sentence letter to the trial judge wherein he talked about the petitioner's efforts to "better the community" and that her "will and determination rubbed off on us (her children)." (See State Record, Vol., 3, Tab 9.) Since information was submitted regarding the petitioner's positive influence on her family, the State argued that it had the right to proffer evidence related to that issue.

Review of the record shows that the contested information was submitted prior to petitioner's original sentence of twenty years. (See State Record, Vol. 5, page 299, Transcript.) (Also see Vol. 4, page 67, Minute Entry of Feb. 13, 2003, where state proffered rap sheets.) Thereafter, the State filed a multiple bill of information charging petitioner as a second felony offender. After conducting a hearing, the trial court found that the State had

---

[31]See State Record, Vol. 5, pages 296-297.

met its burden. Thus, the Court vacated and set aside its original sentence and resentenced petitioner to serve twenty-five years. (See State Record, Vol. 5, pages 326-327.)

Review of the sentencing transcripts does not indicate that the trial court referenced petitioner's children's "rap sheets" during the sentencing hearings. Thus, petitioner has failed to show that the "rap sheets" were considered by the trial court in rendering petitioner's sentence. Petitioner's claim that her counsel was ineffective because counsel failed to object to the "rap sheets" being submitted to the trial court do not go beyond her counsel's strategic choice. Had petitioner not submitted the letters and family photographs to the trial judge for sentencing consideration, there would have been no need for rebuttal by the State. Failure of petitioner's counsel to object to the State's submission did not prejudice petitioner. To prove prejudice under the **Strickland** standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have "been different." **Strickland,** 466 U.S. at 694, 104 S.Ct. At 2068. Petitioner has failed to meet the **Strickland** standard.

On direct appeal, petitioner attacked her sentence as excessive and argued that the trial court failed to provide any reasons when imposing the multiple offender sentence. The Louisiana Court of Appeal, Fifth Circuit stated the following, in pertinent part:

> ...Although the trial judge did not provide any reasons at the multiple offender sentencing, the trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports

the sentence imposed. **State v. Pendelton,** *supra;* LSA C.Cr.P. art. 881.4(D). *See,* **State v. Fairley**, 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 817, upholding a sentence even though the trial court failed to state any reasons for the sentence imposed where the record supported the sentence.

We find that the record supports the imposed sentence. In this case, two guns were recovered from a purse containing documents bearing defendant's name. One of the guns was identified as the gun that belonged to Mr. Bean, the victim of the armed robbery at Albertson's. Although defendant may have initially cooperated with the police, the record reflects that defendant ultimately placed the money that was taken in the armed robbery in Deputy Coussou's police car. Further, the record reflects that defendant claimed an interest in the money, since she told the women in the holding cell that the money was "our money," referring to herself and the driver of the Lincoln.

Additionally, prior criminal activity is one of the factors to be considered by the trial judge in sentencing a defendant. Prior criminal activity is not limited to convictions. **State v. Washington,** 414 So.2d 313, 315 (La.1982); **State v. McCorkle**, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1219. Records introduced at the multiple offender hearing reflected defendant had an Ohio conviction in which she shot a person with a handgun.

The Louisiana Supreme Court has stated that the question presented when reviewing a defendant's sentence is not "whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion." **State v. Jones,** 99-2207 (La.1/29/01), 778 So.2d 1131, 1133. Under all of the circumstances in this case, it does not appear that the trial judge abused his sentencing discretion by imposing a sentence that was approximately one-half the maximum term of imprisonment.

**State v. Uloho,** 875 So.2d at 933-934.

Petitioner has failed to establish any violation of constitutional magnitude. This claim is meritless.

**Claim 3 - Ineffective Assistance of Appellate Counsel**

Petitioner claims that her appellate counsel was constitutionally ineffective due to counsel's failure to raise the issue of insufficiency of evidence. As previously mentioned, the seminal case for adjudicating a habeas petitioner's ineffective assistance of counsel claim is **Strickland v. Washington,** 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), which places on petitioner the burden of demonstrating not only that his counsel's performance was deficient, but also that he was prejudiced as a result of counsel's deficient performance. If a court finds that a petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. **Id.**

The same two-part **Strickland** test required in connection with claims of ineffective assistance of trial counsel is also applicable to claims of ineffective assistance of appellate counsel. *See* **Busby v. Dretke,** 359 F.3d 708, 714 (5th Cir.), cert. denied, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted) ("The familiar **Strickland** framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").

The state responds that petitioner cannot demonstrate that she is entitled to relief under **Strickland**, as the record shows that appellant counsel raised five issues on appeal. Counsel's decision not to bring the issue of insufficiency of the evidence was a strategic decision based upon non-viability of the issue.

The Supreme Court established the due process standard a reviewing court must utilize in analyzing the sufficiency of the evidence in **Jackson v. Virginia,** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Pursuant to **Jackson**, the inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime, as identified by state substantive law, to have been proven beyond a reasonable doubt. **Id.** at 316-17, 99 S.Ct. at 2787.

The bill of information in the subject case charged, in pertinent part:

.. that one Mary Uloho late of the Parish aforesaid, on or about the 5th day of March in the year of our Lord, Two Thousand and One with force of arms, in the Parish aforesaid, and within the jurisdiction of the Twenty-Fourth Judicial District Court of Louisiana, in and for the Parish aforesaid, violated R.S. 14:130.1, in that she did unlawfully commit obstruction of justice by tampering with evidence with the specific intent of distorting the results of a criminal or proceeding which was relevant to a criminal investigation or proceeding involving the armed robbery of Albertson's Grocery Store, contrary to the form and Statute of the State of Louisiana, and against the peace and dignity of the State.

(See State Record, Vol. 1 of 8, for full copy of the bill of information.)

Louisiana Revised Statute 14:130.1 defines obstruction of justice, in pertinent part:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either;

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or

(b) At the location of storage, transfer, or place of review of any such evidence.

The Statement of Facts section of this Report (pages 5-10) is hereby incorporated as though fully set forth in this section. The facts clearly show that a sufficiency of evidence appellate claim was not viable. A summary of the facts shows that Uloho was arrested while she was in an automobile driven by one Elton Thomas, perpetrator of the armed robbery. Two guns were found in the car, and the proceeds of the armed robbery were approximately $15,000 in cash and checks. Uloho was placed in Deputy Coussou's police vehicle. Upon search of the police car, deputies found plastic bags, cash and deposit slips under the back of the front seat of the police car. Uloho told other female inmates that she tried to set up Detective Coussou.

Review of the State's response to this issue presents an adequate and fair summary of the proof presented at trial which demonstrates that the evidence was sufficient to sustain the guilty verdict regarding the charge of obstruction of justice: The State said:

> Based upon the foregoing, the record demonstrates that the petitioner tampered with evidence at or around the scene of the stop with the specific intent of distorting the results of the armed robbery investigation. Specifically, the petitioner surreptitiously transferred the proceeds from the armed robbery from her person and hid it in the deputy's police unit. She then later made a report to Detective Carroll that she had observed a policeman take something out of her car and place it into his car. As such, the petitioner not only removed and hid relevant evidence that would have implicated her and another individual in criminal activity, but she also attempted to compromise the investigation by implicating Deputy Coussou in criminal activity and thus affecting his credibility at trial. The petitioner's actions complicated the armed robbery investigation, caused the police to refocus their efforts on conducting a criminal investigation of Deputy Coussou to determine whether he was corrupt, and "created all kinds of problems." (R., Vol. 4, pp. 140, 205, 207-208.) As such, the evidence was more than sufficient to sustain the conviction.

(See Fed. Record, State's Response in Opposition, Doc. 11, page 19.)

Upon examination and review of the evidence and the applicable law, it is clear that raising an insufficiency of evidence issue on appeal would have been frivolous. Petitioner was not prejudiced as a result of appellate counsel's failure to raise an insufficiency of evidence claim. This claim is meritless.

**Claim 2 - Procedural Bar**

Petitioner argues that her constitutional right to due process of law was violated when the district judge denied her claim of insufficiency of evidence as procedurally barred pursuant to La. C.Cr.P. Art. 930.4(C). The district judge addressed this issue in its order dated April 19, 2006. The trial judge said, in pertinent part:

> In petitioner's second assignment of error, she alleges that the evidence was insufficient to sustain the defendant's conviction. In its Response, the State contends that the defendant is procedurally barred from advancing the claim of insufficiency of evidence. Louisiana Code of Criminal Procedure Article 930.4(C) provides that "[i]f the applicant alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief." While the defendant did raise the issue of sufficiency of evidence with the trial court in a January 10, 2003 *Motion for New Trial Alternatively Motion to Arrest Judgment,* the claim was not thereafter raised on appeal.
> Upon review, the defendant is procedurally barred from raising this issue in her application for post conviction relief. See LA C.Cr.P. Art. 930.4
> Thus, the defendant's claim of ineffective assistance of counsel and insufficiency of evidence are without merit.

(See State Record, Vol. 3 of 8, Tab 6, fourth page of the Order.)

On June 29, 2006, the Louisiana Court of Appeal, Fifth Circuit, denied relief. The Court said:

Relator pursuant to LSA-C.Cr.P. art. 930.2, has failed to meet her burden of proof that relief should be granted. Accordingly, based on the showing made, relator's writ is hereby denied.

(See State Record, Vol. 3 of 8, tab 12 for a copy of the ruling. **State v. Uloho,** No. 06-KH-410).

Petitioner sought relief in the Louisiana Supreme Court which denied relief on April 27, 2007.[32] The court did not set forth any reasons for its denial of relief.

Violations of state law and procedure which do not infringe specific federal constitutional rights are generally not cognizable in habeas corpus. Federal habeas relief is not available for alleged errors in the interpretation or application of state law. **Estelle v. McGuire**, 502 U.S. 62, 112 S.Ct. 475, 116 L. Ed.2d 385 (1991). It is well established that federal habeas review is limited to questions of constitutional dimension. *See generally* **Jernigan v. Collins,** 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); **Castillo v. Johnson,** 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998). To qualify for federal habeas relief, an error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." **Pully v. Harris**, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). I find no denial of due process in this case.

_____

[32]See State Record, Vol. 8 of 8, tab 15, for a copy of the ruling. **State v. Uloho,** No. 2006-KP-1863.

This finding is supported by the section of this Report relative to the third claim of ineffective assistance of appellate counsel  (particularly pages 35-38).  Said section of this Report is adopted and incorporated here by reference as though it was fully printed-out.  The applicable state and federal law, relative to petitioner's conviction for obstruction of justice and the U.S. Supreme Court's due process standard for reviewing a claim for sufficiency of the evidence were fully addressed.  Upon consideration of the above, it is clear that the evidence was sufficient to sustain petitioner's conviction of obstruction of justice.  Since the evidence was sufficient, I also find that appellate counsel's decision not to include the issue of insufficiency of the evidence on appeal did not amount to ineffective assistance. Petitioner clearly suffered no constitutional violation by virtue of the state district court's application of La.C.Cr.P. Art. 930.4(F) since even if the court had addressed the issue of sufficiency of evidence, the claim would have failed.

## RECOMMENDATION

Accordingly, for the aforementioned reasons, **IT IS HEREBY RECOMMENDED** that petitioner, Mary Uloho's application for habeas corpus relief be **DENIED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  **Douglass v. United Services Auto. Ass'n**, 79 F. 3d 1415, 1430 (5th Cir. 1996)(en banc).[33]

New Orleans, Louisiana, this ___9th___ day of _____March_____, 2010.

_____
LOUIS MOORE, JR.
United States Magistrate Judge

---

[33]**Douglas** references the previously applicable ten-day period for filing of objections. Effective December 1, 2009, Section 636(b)(1) was amended to extend that period to fourteen days.